## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| Michael Lemberger, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 07 C 3128 |
| v. | ) | |
| | ) | |
| Sandra Simpson, Thomas Monahan, Brian | ) | |
| Thomas, Anderson Freeman and Dayle Sanders, | ) | |
| | ) | |
| Defendants. | ) | |

### 12(B)(6) MOTION TO DISMISS

Now Comes the Defendant, Sandra Simpson, by and through her counsel, James C.
Vlahakis, and pursuant to FRCP 12(b)(6) moves for the dismissal of Plaintiff's Complaint with
prejudice and in support states the following:

**I.      Introduction**

1.      Plaintiff has been civilly detained by the State of Illinois pursuant to the Sexually
Violent Persons Commitment Act (725 ILCS 205/1, *et seq*.) at a Illinois Department of Human
Services operated Treatment and Detention Facility for Sexually Violent Persons ("TDF")
located in Rushville, Illinois.

2.      Plaintiff has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 and
complains that he has been forced to live in housing unit at the TDF that is inhabited by other
smokers.   Ex. A, Complaint, p. 4.   Plaintiff claims that he has "requested a non-smoking
environment due to my condition [c[h]ronic obstructive pulmonary disease']" and that his
requests have been denied.  *Id*.  Plaintiff is currently housed in a "smoke free room."  *Id*.

3.      Plaintiff does not allege that he has suffered any physical injuries as a result of
living in a housing unit with other smokers.  Rather, he appears to claim that he may suffer a
future injury because the air he breathes is "recycled" and he "cannot open any windows for

fresh air because they are sealed shut." Plaintiff, however, admits that he can "escape this smoke filled environment . . . when I go outside for recreation." *Id*.

4.     Plaintiff has sued the following five (5) individuals: Grievance Examiner Sandra Simpson; Former Facility Director Thomas Monahan; Acting Facility Director Brian Thomas; Chief of Security Dayle Sanders; and Program Facility Director Anderson Freeman. Ex. A, pp. 1-2.

5.     Plaintiff's claims against Grievance Examiner Simpson should be dismissed because Plaintiff has not constitutional right to have his grievances upheld by Ms. Simpson.

6.     Dismissal is also proper because the Seventh Circuit in *Henderson v. Sheahan*, 196 F.3d 839 (7th Cir. 2000) affirmed the dismissal of a similar second-hand smoke claim where the Plaintiff had failed to allege an actual injury.

## II.     Standard of Review

7.     A *pro se* complaint is held to "less stringent  standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972). That said, the Supreme Court, in casting aside 50 years of liberal pleading doctrines identified in *Conley v. Gibson* (1957) has held that a "pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1965 (2007). "It is not . . . proper to assume that [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Id*. at 1969 n.8.

8.     Because § 1983 merely provides a statutory basis to assert constitutional rights elsewhere provided (*see, e.g., Nevada v. Hicks*, 533 U.S. 353, 403-04 (2001)), this Court must determine the constitutional rights that are alleged to have been violated. As a civilly detained

person under the SVP Act, Plaintiff is more akin to a pre-trial detainee than a prisoner for the purposes of determining what Constitutional Amendment forms the basis of his claim. *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005).

9.      As a civilly detained person Plaintiff's claims spring from the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment which typically applies to individuals convicted of a crime. *Palmer v. Marion County*, 327 F.3d 588, 593 (7th Cir. 2003); *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002); *Collignon v. Milwaukee County*, 163 F3d 982, 987-89 (7th Cir. 1998).

10.      While Plaintiff's claims spring from the Due Process Clause of the Fourteenth Amendment, this is a distinction without a difference because the Seventh Circuit has repeatedly endorsed the application of the "deliberate indifference" standard to claims involving detainees and civilly committed individuals. *Brown*, 398 F.3d at 910; *Palmer*, 327 F.3d at 593; *Butera*, 285 F.3d at 605; *Collignon*, 163 F3d at 987-89; *Henderson*,

11.      The "deliberate indifference" standard requires a plaintiff to identify an objective risk of "serious harm" *and* subjective knowledge of said risk:

> a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

12.      For a condition to constitute an objectively and sufficiently serious injury, the condition must result in "unquestioned and serious deprivations of basic human needs," or "deprive inmates of the minimal civilized measure of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981). The minimum level intent required to show subjective intent is "actual

knowledge of impending harm easily preventable." *Duckworth v. Franzen,* 780 F.2d 645, 653 (7th Cir.1985). Thus, if the harm is remote rather than immediate, or the officials do not know about the complained of condition or cannot do anything about it, the subjective component is not established. *Del Raine v. Williford*, 32 F.2d 1024, 1038 (1994). The Eighth Amendment does not mandate the existence of a "maximally safe environment . . . completely free from pollution or safety hazards." *Carroll v. DeTella,* 255 F.3d 470, 472 (7th Cir.2001).

13.    As discussed below, Plaintiff's claim fails to identify any allegations which can be reasonably construed to support the existence of "deliberate indifference" with regard to his conditions of confinement claims.

### III.    Arguments in Support of Dismissal

#### A.    Plaintiff Cannot Lump His Claims Against "Defendants"

14.    Plaintiff has lumped his claims against all of the defendants without differentiating conduct to any particular defendant. Lumping defendants together in this manner without identify them by name violates FRCP 8(a)(2). *See, e.g., Goren v. New Vision Intern., Inc.*, 156 F.3d 721, 730 (7th Cir. 1998); *Sears v. Likens,* 912 F.2d 889, 893 (7th Cir.1990) ("the complaint lump[ed] all the defendants together and [did] not specify who was involved in what activity."); *Design, Inc. v. Synthetic Diamond Technology, Inc.,* 674 F.Supp. 1564, 1569 (N.D. Ill. 1987).

15.    Defendant Simpson serves as the TDF's Grievance Examiner. To the extent that she is being sued in this capacity, this will be addressed in the following section. To the extent that Plaintiff is being sued for any other reasons, Plaintiff's manner of pleading fails to provide Ms. Simpson with adequate notice of any such claim(s). *Phelan v. City of Chicago*, 347 F.3d 679, 682 (7th Cir. 2003) (a plaintiff must allege "sufficient facts ... to allow the district court to

4

understand the gravamen of the plaintiff's complaint."); *Kyle v. Morton High School*, 144 F.3d 448, 455 (7th Cir.1998).

### B.    No Constitutional Right to Have Grievances Upheld

16.    Plaintiff has identified Defendant Simpson as being the facility's Grievance Examiner. While Plaintiff does not specifically allege to have submitted a grievance to her relative to his desire to live in a smoke free living unit, he broadly alleges that he has "requested a non-smoking environment due to my condition [c[h]ronic obstructive pulmonary disease']." Plaintiff, however, has submitted grievances to Ms. Simpson which complain of smokers and. *See* Group Exhibit B, grievances dated 1-19-07(p. 2).

17.    This Court can take judicial notice these documents without converting this motion into a motion for summary judgment. *See, e.g., Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."); *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244 (7th Cir. 1994); *Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998). "[W]ere it not for the exception, the plaintiff could evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved that his claim had no merit." *Tierney v. Vahle***,** 304 F.3d 734, 738 (7th Cir. 2002); *see also, Duferco Steel Inc. v. M/V Kalisti*, 121 F.3d 321, 324 F .3 (7th Cir. 1997) ("We can, of course, also consider the bills of lading and the charter party because, although Duferco failed to attach these vital documents to its complaint, Tomazos attached them to its motion to dismiss."). Various district court have reviewed inmate grievances under this doctrine. *See, e.g., Freeman v. Berge***,** 283 F.Supp.2d 1009, 1011 (W.D. Wis. 2003) ("I have considered documentation of plaintiff's use of the inmate

5

complaint review system. Because these are public records, a court may take judicial notice of the documents without converting the motion to dismiss into a motion for summary judgment"); *Henderson v. Sebastian*, 2004 WL 1563234, *1 (W.D. Wis. 2004) ("Because documentation of a prisoner's use of the inmate complaint review system is a matter of public record, a court may take judicial notice of the documents without converting the motion to dismiss into a motion for summary judgment"); *Sato v. Clarke*, 2003 WL 23274552, *1 (W.D. Wis. 2003) (same).

18.     Here, an examination of the record the record reflects that Ms. Simpson resolved some of these grievances.   For example, she resolved Plaintff's 1-19-07 grievance which complained of  security guard who was smoking outside a halfway open door.  Group Exhibit B (p. 3).  Ms. Simpsons's 2-05-07 response to the 1-19-07 grievance demonstrates that "security supervisory [sic] were informed for the resident's concerns about staff smoking inside with the patio door open.  Resident is advised staff are no allowed to smoke inside the facility, however, residents are allowed to smoke in their rooms." *Id*.

19.     On 3-1-07 Plaintiff grieved that he was "living in a smoke filled environment regardless of the fact that I'm in a smoke free cell I am being forced to breath second hand smoke 24 hours a day 7 days a week."  Group Exhibit B, grievance dated 3-1-07 (p. 4).  *See also* Grievance dated 12-8-07 [sic] (p. 5).  Plaintiff demanded that he be moved to a non-smoking housing unit away from other smokers.  *Id*.  Ms. Simpson responded to this grievance by identifying that the facility allows residents to smoke in their rooms and found that Plaintiff was living in an "optimu[l] situation" as eight of the residents living on his wing were non-smokers. Group Exhibit B, grievance response dated, 2-22-07 (p. 6); Unit housing report (indicating Plaintiff lived in Unit A3 – smokers identified with "*" symbol) (p. 7); and excerpt of 2005 Resident Handbook (identifying on page 7 that "[s]moking is permitted for residents inside their

6

rooms") (pp. 8-10).  Based upon her review of the grievance, the grievance was denied by the Facility Director (Defendant Monahan) and this decision was upheld by the Program Administrator (signature illegible) (p. 6)

20.    Finally, Plaintiff complained on both 3-10-07 and 2-5-07 that residents were allowed to smoke during off-site transport.  Group Exhibit B (pp. 11-12).  Defendant Simpson *granted* Plaintiff's requested relief, stating "[p]er administrative review, the resident is advised smoking will not be allowed in the TDF vehicles . . . [i]t is recommended that this grievance be resolved"  Group Exhibit B (p. 13).  No good deed goes unpunished as Plaintiff has now sued Ms. Simpson.

21.    To the extent Plaintiff has sued Defendant Simpson for recommending that his 3-1-07 grievance be denied (or any other grievance), this claim must be dismissed because he lacks a constitutional to have any grievance granted. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996).  *See also, Azeez v. DeRobertis*, 568 F.Supp. 8, 10 (N.D. Ill. 1982); *Grant v. Sutton*, 2006 WL 2802050, *3 (S.D. Ill. 2006) ("There is no constitutional right to a grievance procedure . . . so their failure to provide a satisfactory response to his complaints is not a separate constitutional violation."); *Agrawal v. Briley*, 2003 WL 164225 (N.D. Ill. 2003) ("her recommendation that the grievance be denied was not a new constitutional violation.").

### C.    Plaintiff Has Not Suffered From a Serious Injury

22.    Plaintiff's claim should be dismissed pursuant to *Henderson v. Sheahan*, 196 F.3d 839 (7th Cir. 2000) which rejected an identical claim that was brought by an inmate of the Cook County Jail.  In *Henderson*, the inmate alleged that he had suffered both an present injury and a risk of future harm.  The Court of Appeals affirmed dismissal of the present in jury claim and

affirmed an award of summary judgment in favor of the defendants with regard to the future injury claim.

23.    With regard to the present injury claim, the Court of Appeals held that forcing the inmate to live amid smokers did not constitute a "substantial risk of serious injury":

> Henderson's complaint does not allege that a physician either diagnosed him as having a medical condition that necessitated a smoke-free environment or treated him for any condition or ailment brought about by his exposure to second-hand smoke-even though he made several trips to medical facilities during the course of his stay at the Cook County jail. Moreover, conspicuously absent from Henderson's complaint is any allegation that a physician ever recommended or ordered that he be removed from the allegedly smoky tier in which he was housed and placed in a non-smoking environment.
>
> Nor do we believe that a layperson would consider the injuries alleged in Henderson's complaint to be so "serious" as to require a physician's care and attention. Instead, the injuries of which Henderson complains-breathing problems, chest pains, dizziness, sinus problems, headaches and a loss of energy-are, objectively speaking, relatively minor. *See Oliver*, 77 F.3d at 160-61. While we do not doubt that these ailments caused him some distress and discomfort, they are not the sort of objectively serious injury or medical need that amounts to a denial of "the minimal civilized measure of life's necessities," *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970, necessary to state a violation of the Fourteenth Amendment. In fact, we have already determined that these sorts of injuries are not sufficiently serious to be constitutionally actionable. *See Oliver*, 77 F.3d at 158-61 (concluding at the summary judgment stage that an asthmatic prisoner failed to demonstrate that he had a serious medical need for a non-smoking environment even though his exposure to second-hand smoke aggravated his asthmatic condition causing him to suffer chest pains, difficulty in breathing, dizziness, nausea and other signs of discomfort).
>
> * * *
>
> Henderson still must show that his present injury from ETS exposure was objectively serious. Henderson was unable to establish any reasonable basis for finding a significant medical condition or ailment at all resulting from his exposure to ETS.

8

*Henderson*, 196 F.3d at 844-46.  *See also*, *Carroll,* 255 F.3d at 472 ("The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans."

24.     Alternatively, this case should have been dismissed under *Bell Atlantic Corp*, 127 S.Ct. at 1965, 1969 (2007) because Plaintiff has failed to allege any facts which demonstrate that he has suffered from a substantial risk of serious harm.

25.     The Court of Appeals also held that summary judgment was properly entered against the plaintiff's future injury claims, holding, in part, that the inmate had failed to demonstrate an injury in fact for being exposed to second hand smoke and for being forced to live with a smoker (a fact not alleged here).  *Henderson*, 196 F.3d at 847-53.  *Henderson* ultimately held that the Plaintiff had failed in his burden.

26.     In doing so, it questioned whether damages could have been awarded had he demonstrated that he suffered from a injury under the difficult standard that it had articulated. *Id*. at 849 n.3 ("Although *Helling* made clear that prisoners may establish an Eighth Amendment claim based upon the unreasonable risk of future serious injury arising out of their exposure to second-hand smoke, the Court did not directly address the question of whether a prisoner may recover monetary damages based upon that risk of future injury").  As demonstrated below, Ms. Simpson is entitled to qualified immunity given the unclear nature of the law as evidence by *Henderson*.   *See* Section IV-E.

27.     Here, given the absence of any present injury, and the fact that the Rushville facility has been open for just over a year, it is unreasonable to presume at this stage that Plaintiff has suffered an increased risk of harm consistent with the high hurdle established by *Henderson*. There, a large court-appointed law firm and a medical expert could not meet this necessary

standards despite the fact that the inmate was house with a roommate who smoked for four ½ years. Here, the present Complaint pales by comparison.

28.     For these reasons, this Court should dismiss Plaintiff's smoke related claims.

### D.     Plaintiff Has No Right to Housing of His Choice

29.     As a final matter, despite his desire to be housed in a non-smoking housing unit, Plaintiff has no constitutionally enforceable right to live in his desired housing conditions. *See, eg., Meachum v. Fano*, 427 U.S. 215, 225 (1976) (holding that Constitution does not guarantee that prisoner will be placed in any particular prison); *Ramirez v. Turner*, 991 F.2d 353 (7th Cir. 1993) (administrative rules did not create liberty interest in inmate's being housed in environment less harsh than the particular prison he was at); *Williams v. Faulkner*, 827 F.2d 304, 309 (7th Cir. 1988) ("Prisoners have no constitutionally protected liberty interest in remaining in any particular wing of a prison."); *Burr v. Duckworth*, 547 F.Supp. 192, 197 (N.D. Ind. 1982) ("This Court's research has uncovered no case which has held that a prisoner has a constitutionally protected right, interest, or expectation to be transferred from one facility to another within a correctional system merely by requesting one.").

### E.     Qualified Immunity

30.     Qualified immunity shields defendants against civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is designed to shield from civil liability all "but the plainly incompetent or those who knowingly violate the law," and "gives public officials the benefit of legal doubts." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175, 1177 (7th Cir. 1994) (affirming award of immunity in the context of a 12(b)(6) motion). It is Plaintiff's burden to defeat qualified immunity.

6253361v1 794835

31.     Here, Ms. Simpson is entitled to qualified immunity the law does not hold

demonstrate that a reasonable individual in her position would have clearly known that her

conduct in denying the grievances would have subjected her to an award of monetary damages.

*Henderson*, 196 F.3d at 849 n.3.

WHEREFORE, for the reasons set forth above, Defendant Sandra Simpson respectfully

requests that this Honorable Court dismiss her from Plaintiff's Complaint with prejudice.

Respectfully submitted,


/s/ James C. Vlahakis
Counsel for Defendant Simpson

James C. Vlahakis
222 N. LaSalle, Suite 300
Chicago, IL 60601
Telephone: 312-704-3000
Facsimile: 312-704-3001

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 13, 2007, I electronically filed the above document, with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

I further certify that on November 14, 2007, I mailed a copy of the above document to the following party of record:

> John Lemberger
> Department of Human Services
> R.R. #1, Box 6A
> Rushville, IL 62681

Respectfully submitted,

By:  <u>s/ James C. Vlahakis</u>
James C. Vlahakis
HINSHAW & CULBERTSON LLP
222 North LaSalle Street
Suite 300
Chicago, Illinois 60601-1081
(312) 704-3000
Jvlahakis@hinshawlaw.com

6253361v1 794835

E-FILED
Wednesday, 14 November, 2007  12:05:45 AM
Clerk, U.S. District Court, ILCD

# Exhibit A

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

Michael Lemberger _____ )
        **Plaintiff** )
         )
   **vs.** )
         )
Sandra Simpson, Thomas Monahan, )
Brian Thomas, Anderson Freeman, )
Dayle Sanders. _____ )
_____ )
       **Defendant(s)** )

Case No. 07-3128

## COMPLAINT

☑ **42 U.S.C. §1983** (suit against state officials for constitutional violations)

☐ **28 U.S.C. § 1331** (suit against federal officials for constitutional violations)

☐ **Other** _____

*Please note: This form has been created for prisoners but can be adapted for use by non-prisoners.*

Now comes the plaintiff, Michael Lemberger _____, and states as follows:

My current address is: R.R. #1 Box 6-A Rushville, Illinois 62681

The defendant Sandra Simpson, is employed as Grievance offical
at D.H.S.T.D.F Rushville Illinois

The defendant Thomas Monahan, is employed as Former Facility Director
at D.H.S.T.D.F. Rushville Illinois

The defendant Brian Thomas, is employed as Acting Facility Director
at D.H.S.T.D.F. Rushville Illinois

The defendant Dayle Sanders, is employed as Chief of Security
at D.H.S.T.D.F. Rushville Illinois

(revised 9/96)

The defendant _Anderson Freeman_ , is employed as _Program Facility Director_

_____ at _DHS. T.D.F. Rushville Illinois_

Additional defendants and addresses _N/A_

_____

_____

_____

_____

For additional plaintiffs or defendants, provide the information in the same format as above on a separate page.

## LITIGATION HISTORY

A. Have you brought any other lawsuits in state or federal court dealing with the same facts involved in this case?          Yes          ☐          No ☑

If yes, please describe _____

_____

B. Have you brought any other lawsuits in state or federal court while incarcerated?
_I am not incarcerated._          Yes  ☐          No ☑

C. If your answer to B is yes, how many? _0_ Describe the lawsuit in the space below.  (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.)

    1. Parties to previous lawsuit:

        Plaintiff(s)    _N/A_

        Defendant(s)    _N/A_

    2. Court (if federal court, give name of district; if state court, give name of county)

        _N/A_

    3. Docket Number/Judge    _N/A_

2

4. Basic claim made _____ N/A _____

5. Disposition (That is, how did the case end. Was the case dismissed? Was it appealed? Is it still pending?) _____ N/A _____

6. Approximate date of filing of lawsuit _____ N/A _____

7. Approximate date of disposition _____ N/A _____

For additional cases, provide the above information in the same format on a separate page.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

A. Is there a grievance procedure available at your institution?    Yes ☑    No ☐

B. Have you filed a grievance concerning the facts relating to this complaint?    Yes ☑    No ☐

If your answer is no, explain why not _____ N/A _____

C. Is the grievance process completed?    Yes ☑    No ☐

*PLEASE NOTE: THE PRISON LITIGATION REFORM ACT BARS ANY INCARCERATED PERSON FROM BRINGING SUIT CONCERNING THE CONDITIONS OF HIS CONFINEMENT UNLESS AND UNTIL HE HAS EXHAUSTED AVAILABLE ADMINISTRATIVE REMEDIES. PLEASE ATTACH COPIES OF MATERIALS RELATING TO YOUR GRIEVANCE.*

Please Note: I am not a Prisoner.

## STATEMENT OF CLAIM

Place of the occurrence   D.H.S. T.D.F. Rushville Illinois

Date of the occurrence   December 8TH 2006

Witnesses to the occurrence   N/A

*State here briefly the FACTS that support your case. Describe how EACH defendant is involved.*
*Do not give any legal arguments or cite cases or statutes. Number each claim in a separate paragraph. Unrelated claims*
*should be raised in a separate civil action.*
**THE COURT STRONGLY URGES THAT YOU USE ONLY THE SPACE PROVIDED.**

I suffer from Cronic Obstructive Pulmonary Disease, Upon my arrival at the Department of Human Services, Treatment and Detention Facility in Rushville Illinois, I notified the medical staff, security staff and counselors of my condition. I requested a non-smoking enviroment due to my condition and my concerns, based upon sientific and Medical evidence proving the dangerous effects of second hand smoke. I was Denied placement in said enviroment and placed on a Pod where the majority of the residents smoke, and was placed in a smoke free room. The room is approximately 7'x10' with double occupancy capacity. There are 18 such rooms on this, and every pod, and to what extent are for non smoking people I do not know. What I can tell you is that the air is recycled, you cannot open any windows for fresh air because they are sealed shut and the only time I can escape this smoke filled enviroment is when I go out side for recreation.

4

Each Defendant named in this Complaint has knowledge of my request and has denied any and all requests I have made requesting a smoke feee enviroment for health reasons. They have even denied my grievance relief, stateing ~~~~ ~~~~ that "Just because I am in a non ~~smot~~ smoking room the second hand smoke dosent stop at the door." I have made every attempt to resolve this matter under the assumption that since I am not incarcerated and being punished for a crime, and that I am here, under the care of D.H.S.T.D.F., for the purpose of "Treatment", that one would assume the level of care would be better than D.O.C., but all I have run into so far is treatment that, if not worse, is at least equal to the treatment I recieved as a prisoner while in the Depaetment of Corrections.

## RELIEF REQUESTED

*(State exactly what relief you want from the court.)*

I want to live in a smoke free enviroment and I am seeking nominal damages, compensatory damages and if applicable, punitive damages all to be applyed at a later time if possiable.

**JURY DEMAND**        Yes    ☑                No    ☐

Signed this _____ 16ᵗʰ day of MAY _____ , 2007.

*Michael Lemberger*
( Signature of Plaintiff)

| Name of Plaintiff: Michael Lemberger | Inmate Identification Number: |
|---|---|
| Address: R.R. 1 Box 6A Rushville Illinois 62681 | Telephone Number: 217-322-3204 |

6

# Exhibit B

State of Illinois
Department of Human Services

# TDF Resident Grievance



| Name of Resident: *Lemberger* | ID #: | Date of Incident Occurrence: *1-19-07* | Unit: *A3* |
|---|---|---|---|

| Date Received  01-23-07 P04:24 IN | Grievance #: **01 07 GR 0086** |
|---|---|

**Nature of Grievance**

☐ Personal Property  ☒ Staff Conduct  ☐ Mail Handling  ☐ Meals  ☐ Medical  ☐ Other:  (Specify): _____

☐ Disciplinary Report:  Report Date: _____

(Attach copy of Notice of Appearance Before The Behavior Committee and Behavior Committee Decision.)

Use only this form to give a BRIEF Summary of Grievance:

ON 1-19-07 I observed S.T.A. THURMAN Smoking in the Door way on unit A-3 patio. I informed S.T.A. THURMAN that I'm a Non-Smoker and that smoking was not allowed in the common area.

I also complained that it was very cold outside and that with the Door being wide open it was makeing it cold in the common area.

S.T.A. THURMAN continued to smoke throughout the day half in and half out of A.3 patio. A review of your surveillance camra will verify my allegation

S.T.A. THURMAN stated that she demands respect, when she herself will not respect another persons space, nor respect the rules of the institution. I do not feel that this S.T.A. is acting in a professional mannor.

Relief Requested: I AM AGAINST SMOKING compleatly AND I DONT feel I should be forced to breath it, especially from an S.T.A. who could step compleatly out side and close the door. Not half in and half out. I would like this practice to stop.

☐  Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Resident Signature: *Lemberger*          Date: *1-19-07*

State of Illinois
Department of Human Services

# TDF Resident Grievance



---

**Grievance Examiner's Response:**

The resident grieved on 11/19/06, the resident observed STA Thurman smoking in the doorway on Unit A3 patio. I informed STA Thurman that he's a non-smoker and that smoking was not allowed in the common area. I also complained that it was very cold outside and that she was causing it to be cold in the common area. STA Thurman continued to smoke throughout the day half in and half out of A3 patio. The resident does not feel STA Thurman is acting in a professional manner.

Grievant's requested relief is he does not feel he should be forced to breath cigarette smoke, especially from a STA who could step completely outside and close the door. He wants this practice to stop.

Per administrative review, security supervisory were informed of the resident's concerns about staff smoking inside with the patio door opened. The resident is advised TDF staff are not allowed to smoke inside the facility, however, residents are allowed to smoke in their rooms.

It is recommended this grievance is Resolved.

2-05-07
GV 0086
Lemberger, M

---

Grievance Examiner's Signature: _Sandra Simpson_     Date: _2/27/07_

---

Date Received: _2/22/07_     **FACILITY DIRECTOR'S RESPONSE**

Facility Director's Decision: Grievance: ☑ Upheld     ☐ Denied

Behavior Committee Decision Appeal: ☐ Upheld     ☐ Denied

Response:

Facility Director Signature: _____     Date: _2/28/07_

NOTE: If appealing the Facility Director's Decision, please attach the Grievance Appeal Form and forward to Grievance Examiner

---

Date Received: _____     **PROGRAM ADMINISTRATOR'S RESPONSE**

Program Administrator Concurs With The Facility Director's Decision: ☐ Yes     ☐ No

Response:

Program Administrator Sigature: _____     Date: _____

---

IL462-5001 (R-6-06)        Distribution: Master File; Resident        Page 2 of 2



State of Illinois
Department of Human Services

# TDF Resident Grievance - Appeal Form

| Name of Resident: Mr. Lemberger | ID #: | Date of Submitted: 3-1-07 | Unit: A-3 |
|---|---|---|---|
| Date Received by Administration: 3-06-07 | | Grievance #: 02 07 GR 0121 | |

USE BLACK INK ONLY

SUMMARY OF GRIEVANCE APPEAL:

I HAVE COPD, A LUNG DISEASE, I AM LIVING IN A SMOKE filled ENVIROMENT. Reguardless of the fact that I'M IN A SMOKE free Cell I AM STILL BEING forced to breath Second HAND SMOKE 24 HOURS A DAY 7 days A week I Live IN A SEALED ENVIROMENT, Do you THINK THE CIGARETTE SMOKE is going TO AVOID my Cell? You ARE PLACEING my life IN DANGER SMOKEING IS A CHOICE, I CHOOSE NOT TO SMOKE, I HAVE THE RIGHT to breath SMOKE free AIR. You DON'T HAVE THE RIGHT to place my life IN DANGER by forceing me to breath second HAND SMOKE AND TO MINIMIZE THAT THREAT BY telling me that I'M IN A SMOKE free cell. I WANT TO BREATH CLEAN AIR - So let me make my-self CLEAR. I DO NOT WANT ANY ONE IN my living AREA SMOKING on the SAME UNIT AS I'M ON, Reguardless if it's IN there Cells OR NOT. SMOKE DRAfts - I CAN smell it, AND if I CAN smell it, I AM BREATHING it.

Resident's Signature: Mr. Lemberger

ALL GRIEVANCE APPEALS MUST BE FILED ON THIS OFFICIAL GRIEVANCE APPEAL FORM

Grievance must be filed within 30 days after receipt of the Facility Director's response. Please attach the grievance with the Grievance Examiner's report and the Facility Director's decision. Forward to the Grievance Examiner.

**DHS**

State of Illinois
Department of Human Services
TDF RESIDENT GRIEVANCE

Name of Resident: _Lemberger_     ID#          Date of Incident Occurrence: _12-8-07_

Date Received by Administration:
02-06-07 A07:23

Grievance #: 02 07 GR 0121

### Nature of Grievance

☐ Personal Property ☐ Staff Conduct (Attempt to Resolve) ☐ Mail Handling ☐ Meals ☐ Medical ☒ Other (specify): _Placement in Non-Smoking Environ._

☐ Disciplinary Report:   Date of Report_____   (Attach copy of Notice of Appearance Before The Behavior Committee and Behavior Committee Decision, then forward to the Grievance Examiner.)

Use only this form to give a BRIEF Summary of Grievance: _Upon my arrival here at DHS-TDF I informed the staff that A) I have C.O.P.D. and B) I am a Non-Smoker. I have requested Non-Smoking Housing since I've been here and still have not been placed in a Non-Smoking Environment. Every one on this unit smokes with the exception of 1 or 2 Residents - Therefore I am being forced to breath second hand smoke 24 hours a day. Second hand smoke kills - I don't want to breath it._

Relief Requested: _Non-Smoking Environment_

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Resident Signature: _Michael Lemberger_          Date: _2-2-07_

IL.462-5001 (R-4-04)          Distribution: Master File; Resident

State of Illinois
Department of Human Services

# TDF Resident Grievance

Grievance Examiner's Response:

The resident grieved that upon his arrival here he informed DHS-TDF staff that he has COPD and is a non-smoker. He requested non-smoking housing every since he's been here and still has not been placed in a non-smoking environment. Everyone on this unit smokes with the exception of 1 or 2 residents. Therefore I am being forced to breath secondhand smoke 24 hours a day. Secondhand smoke kills. I don't want to breathe it.

Grievant's requested relief is a non-smoking environment.

Per administrative review, the resident is advised resident are allowed to smoke in their rooms per the Resident Handbook. I reviewed the housing scheduled on Unit A3. I note you reside in Room #2 with a non-smoker and the room assignment list shows non-smokers in rooms #1 through #8 on your wing. It is determined that you are in the optimum situation possible at this time.

It is recommended this grievance be denied.

2-22-07
GV 0121
Lemberger, M

Grievance Examiner's Signature: _Sandra Simpson_          Date: _2/22/07_

Date Received: _2/26/07_          FACILITY DIRECTOR'S RESPONSE

Facility Director's Decision: Grievance:  ☐ Upheld    ☑ Denied

Behavior Committee Decision Appeal:  ☐ Upheld    ☐ Denied

Response:

Facility Director Signature: _T J Monahan_          Date: _2/26/07_

NOTE: If appealing the Facility Director's Decision, please attach the Grievance Appeal Form and forward to Grievance Examiner

Date Received: _3/20/07_          PROGRAM ADMINISTRATOR'S RESPONSE

Program Administrator Concurs With The Facility Director's Decision:  ☑ Yes    ☐ No

Response:

Program Administrator Sigature: _____          Date: _3/27/07_

IL462-5001 (R-6-06)          Distribution:  Master File; Resident          Page 2 of 2

# UNIT A

## UNIT A1

| | | | |
|---|---|---|---|
| 1 | Evans | Hoppes (L) | 2 |
| 2 | Field | Roberts, A. | 2 |
| 3 | Swope | | 1 |
| 4 | Windham | | 1 |
| 5 | J.Diaz | Allen J. * | 2 |
| 6 | Roots, S. | Reed | 2 |
| 7 | Peppers* | Graham* | 2 |
| 8 | Wedegartner * | Bice * | 2 |
| 9 | Arnold * | Hoskins * | 2 |
| 10 | R. Howard* | Morrisse* | 2 |
| 11 | Fitzpatrick* | Miller | 2 |
| 12 | Hauge * | Collier | 2 |
| 13 | Hays * | Simons* | 2 |
| 14 | Smith, S. * | | 1 |
| 15 | Swafford * | Baze * | 2 |
| 16 | Kranz | Smith, Arthur | 2 |
| 17 | Hancock ** (L) | Handicap | 1 |
| 18 | Anton* | Pacharek* | 2 |

| Available | 3 | Total | 32 |
|---|---|---|---|

## UNIT A2

| | | | |
|---|---|---|---|
| 1 | New * | Morris* | 2 |
| 2 | Hurlbert* | | 1 |
| 3 | Kilbury* | | 1 |
| 4 | Sveda* | Moss * | 2 |
| 5 | Stafford* | | 1 |
| 6 | Wristen* (L) | | 1 |
| 7 | Scoggins(L)* | | 1 |
| 8 | Ottinger * | | 1 |
| 9 | Duke | | 1 |
| 10 | Bushong | Hansen | 2 |
| 11 | Halbrook | Sandry | 1 |
| 12 | Pieroni* | Sanches-Robles* | 2 |
| 13 | Brand* | Welch* | 2 |
| 14 | Madigan (L) * | Johnson, P.* | 2 |
| 15 | Williams, J.* | Birch* | 2 |
| 16 | Brown, E. | Swanson, W.(L)* | 2 |
| 17 | Lewis | Handicap | 1 |
| 18 | Brock | Best, J. | 2 |

| Available | 8 | Total | 2? |
|---|---|---|---|

## UNIT A3

| | | | | | |
|---|---|---|---|---|---|
| 1 | Taylor | | 1 | | |
| 2 | Schroeder | Lemberger | 2 | | |
| 3 | Sewell | Williams, E. | 2 | | |
| 4 | Racanelli | Rolland | 2 | | |
| 5 | Walker, F. | | 1 | | |
| 6 | Hermosillo, H. | Eggert | 2 | | |
| 7 | | | 0 | | |
| 8 | Lane | | 1 | | |
| 9 | Mislich * | | 1 | | |
| 10 | Fields | | 1 | | |
| 11 | Hall * | | 1 | | |
| 12 | Lanasa * | | 1 | | |
| 13 | Schertz | | 1 | | |
| 14 | Steward A(L) | | 1 | | **KEY** |
| 15 | Williams, P. * (L) | | 1 | * | Smoker |
| 16 | Jones | Handicap | 1 | | Non-smoker |
| 17 | Kemper * | Grice | 2 | (L) | LOWER BUNK |
| 18 | Beals * | Daniels * | 2 | C | Clinical Single |

Printed 9/21/07

# Illinois Department of Human Services
# Treatment and Detention Facility

**NOTE: EFFECTIVE JANUARY 1, 2005, THIS RESIDENT HANDBOOK WILL SUPERCEDE ANY PRIOR RESIDENT HANDBOOK, POLICIES AND PROCEDURES**

# Resident Handbook
## TABLE OF CONTENTS

I. INTRODUCTION AND OVERVIEW ........................................... 1
   A. The Resident Handbook ................................................ 1
   B. Mission .............................................................. 1
   C. Vision ............................................................... 1
II. DAILY LIVING AND RULES ................................................ 2
   A. Resident Behavior Management System ................................. 2
     1. Special Management Status ....................................... 2
     2. Close Management Status ......................................... 3
     3. General Status .................................................. 3
     4. Intermediate Status ............................................. 4
     5. Advanced Group ................................................. 5
   B. Daily Schedule ....................................................... 6
   C. Daily Life ........................................................... 6
     1. Resident Rooms ................................................. 6
     2. Room Standards ................................................. 6
     3. Meals .......................................................... 7
     4. Smoking ........................................................ 7
     5. Work Order Requests ............................................ 7
   D. USE OF COMMON AREA ............................................... 7
     1. Day room ....................................................... 7
     2. Day room Television Viewing ..................................... 8
     3. Recreation Yard ................................................ 8
   E. Recreational Privileges ............................................... 8
   F. Hygiene and Dress Code ............................................... 8
     1. Laundry ........................................................ 8
     2. Articles of Personal Hygiene ..................................... 8
     3. Other Hygiene Standards ......................................... 8
     4. Shaving ........................................................ 9
     5. Haircuts ........................................................ 9
     6. Resident Dress Code ............................................ 9
     7. Dress Regulations ............................................... 9
   G. Prohibited Activities ................................................ 10
     1. Cursing and Yelling ............................................ 10
     2. Trading and Trafficking ......................................... 10
     3. Room Visiting .................................................. 10

     family or friends

b.   Purchase food from outside sources

c.   With prior written approval have non-food items brought in on a visit

d.   No unit curfew, although once resident enters his room after 11:00p.m. he must remain in room until 7:00 a.m.

e.   Doors to rooms are left open during the day

f.   Have pre-rolled packaged cigarettes and chewing tobacco (unopened and in original package) sent in from family

g.   May receive incoming calls at designated times

AG residents who meet the Unit expectations will receive a 5 point per week reward that can be used in Community Living System Commissary only.

Additional unit rules and procedures can be found in the AG Unit Handbook.

# B. Daily Schedule

The typical daily routine are posted on your Unit bulletin board. Changes and cancellation of some activities may occur because of security issues or other reasons. Staff will make every effort to notify residents of changes in the daily schedule.

# C. Daily Life

1.   **Resident Rooms:** The name of each resident will be posted outside the door of his room. All residents are to have name plates on their doors for count purposes. The residents are not to remove the name plates from outside their doors. If name plates are removed, an incident report will be generated. This is "Destruction of State Property", a major rule violation. Residents are not allowed to place signs or decorations on their doors except for notices that have been approved by the unit staff (such as an early wake up notice). Residents are not to cover in room security lights on Unit C, D, or E.

Except for the AG, room doors should be closed at all times, except to allow access to, or egress from your room including when you are inside your room. Nothing can be allowed to obstruct the opening or closing of the door or obstruct the view into the room at any time, except to cover the window for bathroom privileges.

2.   **Room Standards:** Residents are expected to take good care of their living area. Residents will keep their rooms clean. Rooms must be free of clutter, dirt, and odor. Cleaning materials are available for use under the supervision of staff.

Residents are expected to make their beds by 8:00AM. After 8:00AM, residents may lie on their beds covered by a single blanket. Residents should keep all bedding tucked neatly under the mattress in order to provide a clear view of the floor.

All clothing, footwear and linens should be folded, hung-up, packed, or stored in a neat and orderly manner. Do not place items on the floor.

All soiled laundry must be stored in the laundry bag; residents are responsible for exchanging bed linens weekly.

Room inspections and searches are conducted routinely. Contraband, questionable items and excess materials may be confiscated or disposed of. Residents are not allowed to possess any items that do not comply with program policies or that are not included on the resident's list of approved personal property. Residents will be permitted to observe room inspections and searches so long as they do not interfere with the search.

If a resident discovers wear or damage to his room or furnishings, he should immediately inform staff.

3.   **Meals:** Meals will be served in the dining area or on units at posted times. Residents are expected to follow all dining room rules and regulations. After finishing the meal, each resident must empty all food waste in the proper receptacle and return all trays and utensils in a neat and orderly fashion. Styrofoam is contraband and allowed on the units only for delivery of meals. These Styrofoam items must be disposed of after use.

- Medical diets need to have a Physician's order.

- Extra meals are not provided. Vegetarian or other specialized diets based on personal preference will not be provided. Special meals based on medical needs must be approved by Health Care.

- Residents on Special or Close Status, or on unit restriction will be served their meals on their units.

4.   **Smoking:** Smoking is permitted for residents inside their rooms, and generally permitted in all outdoor areas.

Residents are expected to use smoking materials safely and dispose of cigarette butts and waste in designated waste containers.

5.   **Work Order Requests:** Residents can not directly request a work order. Resident must inform security staff. Security staff will fill out the work order request and submit to Maintenance.

# D.   USE OF COMMON AREAS

1.   **Day room:** Residents should be courteous and respectful to others. This includes sitting properly in the chairs and sharing the use of furniture and property. Residents are not permitted to sit or lie on the floor or to lie on the furniture. Feet must be kept off the walls and furniture. Residents cannot use tables or other objects for seats or footstools.

Residents share equally in maintaining the cleanliness and order of the common areas. This includes cleaning up, disposing of garbage, and returning games, books or other items to their proper places.

Residents are expected to cooperate and share the use of the microwave or refrigerator in the day room. Residents are expected to operate equipment properly and clean up

State of Illinois
Department of Human Services

# TDF Resident Grievance - Appeal Form



| Name of Resident: | Lemberger | ID #: | | Date of Submitted: | 3-10-07 | Unit: | A 3 |
|---|---|---|---|---|---|---|---|

Date Received by Administration:  03-12-07 A07:57 IN

Grievance #:  02 07 GR 033

USE BLACK INK ONLY

SUMMARY OF GRIEVANCE APPEAL:

This Grievance is not Resolved: The Facilityes Director's Decision has nither been upheld nor Denied.

The facility Directors Response is that the "Smoking Policy is being reviewed." This Response is unacceptable, I want a definitive yes or no answer.

Let me remind you that D.H.S.-T.D.F vehicles are common areas where somoking is prohibited.

I want the memorandum dated 1-25-07 to be recinded and a Revised Memorandum in place, notifing the residents and staff that smoking is strictly prohibited in All D.H.S.-T.D.F Transport Vehicles

As of the writing of this Appeal the original Memorandum, Dated 1-25-07 is still posted on A-3.

ident's Signature:  M. Lemberger

GRIEVANCE APPEALS MUST BE FILED ON THIS OFFICIAL GRIEVANCE APPEAL FORM

vance must be filed within 30 days after receipt of the Facility Director's response. Please attach the grievan̲̅c̲̅e̲̅ with the
vance Examiner's report and the Facility Director's decision. Forward to the Grievance Examiner.

-5006 (R-4-06)  c: B. Thomas
c: D. Gardner   age 1 of 1

**DHS**

State of Illinois
Department of Human Services
TDF RESIDENT GRIEVANCE

| Name of Resident: Mr. Lemberger | ID# | Date of Incident Occurrence: 2-5-07 |
|---|---|---|

| Date Received by Administration: A07:00 02-08-07 A07:00 | Grievance # 02 07 GR 0133 |
|---|---|

**Nature of Grievance**

☐ Personal Property ☐ Staff Conduct (Attempt to Resolve) ☐ Mail Handling ☐ Meals ☐ Medical ☒ Other (specify): Smoking

☐ Disciplinary Report: Date of Report _____ (Attach copy of Notice of Appearance Before The Behavior Committee and Behavior Committee Decision, then forward to the Grievance Examiner.)

Use only this form to give a BRIEF Summary of Grievance: I READ A MEMORANDUM DATED 1-25-07 from STA IV TARRY WILLIAMS ABOUT RESIDENTS SMOKING MATERIALS ON WRITS. IT STATES THAT RESIDENTS CAN SMOKE IN THE VAN ON WRITS. I AM A NON-SMOKER, I HAVE C.O.P.D. AND I FIND THIS PRACTICE TO BE UNACCEPTABLE. I WILL NOT BE FORCED TO BREATH SECOND HAND SMOKE WHILE I AM BEING TRANSPORTED ANY WHERE, EITER FROM RESIDENTS SMOKING, OR FROM STAFF SMOKING. SECOND HAND SMOKE KILLS.

Relief Requested: CHANGE POLICY

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Resident Signature: Mr. Michael Lembur     Date: 2-5-07

IL462-5001 (R-4-04)     Distribution: Master File; Resident

**Grievance Examiner's Response:**

The resident grieved on he read a memorandum dated 1/25/07, from Capt. Williams about residents smoking materials on writs. It states, residents can smoke in the van on writs. He is a non-smoker who has COPD and would find this practice unacceptable. He will not be forced to breath secondhand smoke while he is being transported anywhere, either from residents smoking or from staff smoking. Secondhand smoke

Grievant's requested relief is to change policy.

Per administrative review, the resident is advised smoking will not be allowed in the TDF vehicles. If such a memo exists, it will be rescinded.

It is recommended this grievance is Resolved.

2-08-07
GV 0133
Lemberger, M

Grievance Examiner's Signature: _Sandra Simpson_   Date: _2/08/07_

---

Date Received: _2/14/07_   **FACILITY DIRECTOR'S RESPONSE**

**Facility Director's Decision;  Grievance:** ☐ Upheld  ☐ Denied  **Behavior Committee Decision Appeal:** ☐ Upheld  ☐ Denied
**Response:**

Resolved. Smoking policy being reviewed.

Facility Director Signature: _J Monahan_   Date: _2/21/07_

---

NOTE: If appealing the Facility Director's Decision, please attach the Grievance Appeal Form and forward to Grievance Examiner.

Date Received: _3/20/07_   **PROGRAM ADMINISTRATOR'S RESPONSE**

**Program Administrator Concurs With The Facility Director's Decision:**  ☒ Yes   ☐ No
**Response:**

Smoking in the enclosed space of a van should be prohibited.

Program Administrator Signature: _____   Date: _3/27/07_

IL462-5001 (R-4-04)   Distribution: Master File; Resident