**E-FILED**
Wednesday, 30 April, 2008   07:30:06 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| Michael Lemberger, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 07 C 3128 |
| v. | ) | |
| | ) | Judge: Harold Baker |
| Sandra Simpson, Thomas Monahan, Brian Thomas, Anderson Freeman and Darrell Sanders, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT SANDRA SIMPSON'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant, Sandra Simpson, by and through her counsel, submits the following as her Memorandum of Law in Support of her Motion for Summary Judgment:

**I.      Introduction**

Plaintiff, Michael Lemberger, is in the custody of the Illinois Department of Human Services (the "DHS") at the Rushville Treatment & Detention Facility ("Rushville TDF") pursuant to the Sexually Violent Persons Commitment Act, 725 Ill. Comp. Stat. Ann. 207/1 *et seq.* (West 2007) (the "SVP Act"). Plaintiff claims that he has been exposed to second-hand to environmental tobacco smoke ("ETS") at the Rushville TDF and that this exposure has endangered his health. Defendant Sandra Simpson is a grievance examiner at the Rushville TDF. Complaint, p. 1. She is employed by Liberty Healthcare Corporation, a contractor with DHS, which provides sex offender treatment and related services to individuals detained at the Rushville TDF. Smoking at the Rushville TDF was banned on or about January 1, 2008. Despite the relief that this provides to Plaintiff, he alleges that Ms. Simpson was deliberately indifferent to his health. Defendant Simpson moves for summary judgment on the following

6313673v1 794835

grounds: (1) that Plaintiff did not suffer from an objectively serious health concern or medical need; (2) that she was not deliberately indifferent to Plaintiff's serious medical needs; (3) that Plaintiff has suffered no existing or otherwise cognizable injury; (4) that Plaintiff cannot state a claim based upon the denial of a grievance; and (5) that Defendant Simpson is entitled to qualified immunity.

## II.    Legal Standards to Apply

While Plaintiff's legal rights spring from the Due Process Clause of the Fourteenth Amendment by virtue of the civil nature of the SVP Act, the Seventh Circuit has repeatedly endorsed the application of the "deliberate indifference" standard to claims involving persons detained or committed under the SVP Act. *Sain v. Wood*, __ F.3d __, 2008 WL 80643 *6 (7th Cir. Jan. 9, 2008); *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). *See also*, *Moore v. Monahan*, 2008 111299, * (N.D. Ill. 2008). Accordingly, it is proper to examine Plaintiff's claim under Eighth Amendment cases interpreting claims brought by prisoners or individuals held in county jails.

## III.    Undisputed Facts

1.    Defendant Simpson was and is employed as a Grievance Examiner. (Complaint, p. 1. *See also*, Plaintiff's grievances and responses signed by Ms. Simpson, attached as Exhibit B to Defendant Simpson's Motion to Dismiss)

2.    Plaintiff has acknowledge that he did not suffer *any* physical injury from the alleged second hand smoke. (Plaintiff's Response to Motion to Dismiss, docket no. 23, ¶ 3).

6313673v1 794835

3.      As of January 1, 2008, the Rushville Facility was declared a tobacco free facility.  DHS Defendants' Motion for Summary Judgment, Exhibit A (affidavit of Michael Bednarz, ¶ 3).[1]

4.      There is no evidence that Plaintiff suffers from any lung pathology and he has been seen regularly by medical staff at the Rushville Facility.  DHS Defendants' Motion for Summary Judgment, Exhibit A (affidavit of Michael Bednarz, ¶¶ 4-7).

5.      There is no evidence that Plaintiff's chronic obstructive pulmonary disease has been aggravated by his confinement at the Rushville Facility.  DHS Defendants' Motion for Summary Judgment, Exhibit A (affidavit of Michael Bednarz, ¶¶ 6-7).

## IV.    Argument

### A.    Plaintiff Fails To State A Claim Under The Eighth Amendment

Plaintiff faces a very high legal hurdle.  Claims for deliberate indifference to a serious medical must establish satisfy objective and subjective components. Under the objective component, Plaintiff must demonstrate that his medical need is "objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the need for a doctor's attention.  *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).  Here, Ms. Simpson is not a doctor but is a grievance examiner.  *See* Complaint, p. 1.

Under the subjective component, Plaintiff must demonstrate that Ms. Simpson acted with a "'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  Deliberate indifference is not shown by what Ms. Simpson "should have

---

[1]      In the interests of judicial economy, Defendant Simpson moves to adopt Dr. Bednarz's affidavit.

6313673v1 794835

known." *Farmer,* 511 U.S. at 838; *Riccardo v. Rausch*, 375 F.3d 521, 526 (7th Cir. 2004) (it is not enough that the "guard *ought* to have recognized the risk" (original emphasis)).  Thus, even if Ms. Simpson failed to address a "significant risk that [s]he should have perceived but did not," this would not constitute a violation of the Eighth Amendment.  *Farmer,* 511 U.S. at 838. Rather, Ms. Simpson "may be held liable under the Eighth Amendment for denying humane conditions of confinement only if [s]he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer,* 511 U.S. at 847. *See also, Del Raine v. Williford*, 32 F.2d 1024, 1038 (1994) (holding that if officials do not know about the complained of condition or cannot do anything about it, the subjective component is not established).  Plaintiff cannot meet these exacting standards.

Further, the Eighth Amendment does not mandate the existence of a "maximally safe environment . . . completely free from pollution or safety hazards." *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001) ("The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans.").  In fact, the Seventh Circuit has rejected the notion that requiring an inmate to live amid smokers constituted a "substantial risk of serious injury," not withstanding the inmate's complaints of breathing problems, chest pains, dizziness, sinus problems, headaches and a loss of energy.  *Henderson v. Sheahan*, 196 F.3d 839, 844-46. (7th Cir. 1999).  According to the court, these complaints were minor issues which did not amount to objective violations of the Eighth Amendment.  *See also,* Oliver v. Deen, 77 F.3d 156, 158-61 (7th Cir. 1996) (holding that an asthmatic prisoner failed to demonstrate that he had a serious medical need for a non-smoking environment even though his exposure to secondhand smoke aggravated his asthmatic condition).

4

In contrast to *Henderson*, Plaintiff expressly acknowledges that he did not suffer *any* physical injury from the alleged second hand smoke. (Plaintiff's Response to Motion to Dismiss, docket no. 23, ¶ 3)  Moreover, as pointed out in the DHS Defendants' Motion for Summary Judgment, Plaintiff has not complained to medical staff about any serious injuries.  *See* DHS Defendants' Undisputed Material Fact, Nos. 6-9.[2]  Accordingly, the medical problems alleged by Plaintiff are not sufficiently serious to be constitutionally actionable.

Defendant Simpson is also entitled to summary judgment under *Greeno v. Daley*, 414 F.3d 654 (7th Cir. 2005) which provides that "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."  *Id*. at 656.  According to *Greeno*, "[h]olding a non-medical prison official liable in a case of where a prisoner was under a physician's care would strain this division of labor." *Id*.  District courts have routinely applied *Greeno* to bar claims of deliberate indifference against non-medical staff.  *See, e.g., Bond v. Aguinaldo*, 228 F.Supp.2d 918, 920 (N.D. Ill. 2002). (dismissing claim and holding, "[e]xcept in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals."); *McEachern v. Civiletti,* 502 F.Supp. 532, 534 (N.D. Ill. 1980) ("[Defendants] are prison administrators, not licensed medical practitioners. Lacking the requisite expertise, they must necessarily place their confidence in the reports of the prison doctors whenever an inmate disputes a medical opinion as to what treatment is necessary and proper.").

Here, given the fact that Ms. Simpson is not a medical provider and a medical doctor employed by DHS has opined that Plaintiff has not suffered a significant injury (*see* DHS

---

[2]    In the interests of judicial economy, Defendant Simpson moves to adopt these factual assertions.

6313673v1 794835

Motion for Summary Judgment and Affidavit of Dr. Michael Bednarz), there is no reasonable basis to find that Ms. Simpson should have know (as a layperson) that Plaintiff suffered from a serious medical condition that required intervention by DHS in the form of a smoking ban. Even if Plaintiff suffered from a serious condition, it is unreasonable to suggest that a grievance examiner (acting alone *and* employed by a private contractor) could have modified the then current DHS policy which allowed smoking in resident rooms. *See e.g., Del Raine v. Williford*, 32 F.2d 1024, 1038 (1994) (holding that if officials cannot do anything about it, the subjective component is not established); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007).

Finally, it is axiomatic that hypothetical injuries are not compensable or appropriate in this action. *See, e.g., City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983); *Lewis v. Casey*, 518 U.S. 343, 350 (1996). Significantly, "a plaintiff may not recover monetary compensation for a currently unmanifested injury under Illinois law (or the law of this Circuit) unless the future serious injury is 'reasonably certain to occur.'" *Henderson*, 196 F.3d at 847-49, 851-53. Henderson affirmed the dismissal of a second hand smoke claim where the plaintiff failed to present admissible evidence that he was at risk of any future ill effects from the smoke. *See also, Carroll v. DeTella,* 255 F.3d 470, 472-73 (7th Cir.2001) (reported lead and radium levels in prison water did not constitute cruel and unusual punishment where present injury was not demonstrated).

### B.    The Denial of a Grievance Does Not Violate the Constitution

Plaintiff cannot state a constitutional claim against Defendant Simpson on the basis that she denied one or more of his grievances. *See, e.g., Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Greer v. DeRobertis*, 568 F.Supp. 1370, 1374 (N.D. Ill. 1983) (As Greer concedes, the Fourteenth Amendment does not mandate administrative review of prison

6313673v1 794835

disciplinary actions.  That well-settled proposition necessarily undercuts Greer's bald assertion that Allen was obligated to respond to his grievance, for that is just another way of saying Greer was entitled to invoke Stateville's grievance machinery" (citations omitted); *Azeez v. DeRobertis*, 568 F.Supp. 8, 10 (N.D. Ill. 1982).  *See also*, *Grant v. Sutton*, 2006 WL 2802050, \*3 (S.D. Ill. 2006) ("There is no constitutional right to a grievance procedure . . .  so their failure to provide a satisfactory response to his complaints is not a separate constitutional violation."); *Agrawal v. Briley*, 2003 WL 164225 (N.D. Ill. 2003) ("There is no constitutional right to a grievance procedure . . . so her recommendation that the grievance be denied was not a new constitutional violation.").

More recently, the Seventh Circuit reiterated the principle that while a prison guard can be held liable for allowing a fellow guard attack an inmate, an inmate cannot state a constitutional claim against a guard who denies a grievance which complained about the attack:

> Finally, a brief word about George's claims against the defendants who handled his administrative protests concerning the events covered by the complaint.
>
> * * *
>
> Doubtless these persons would be eligible for qualified immunity, but we need not reach that question. George's argument on the merits is that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself.  That proposition would not help him if it were correct, for he has lost on all of his underlying constitutional theories.  But it is not correct.  Only persons who cause or participate in the violations are responsible.  Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.  A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.

*George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) (citations omitted).

### C.    Qualified Immunity

Qualified immunity shields defendants against civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is designed to shield from civil liability all "but the plainly incompetent or those who knowingly violate the law," and "gives public officials the benefit of legal doubts."  *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175, 1177 (7th Cir. 1994) (affirming award of immunity in the context of a 12(b)(6) motion).  Defendant Simpson is entitled to qualified immunity as the facts do not demonstrate that a reasonable individual in her position would have clearly known that his conduct violated the Constitution.  Ms. Simpson  is entitled to qualified immunity notwithstanding the fact that she is employed by a private contractor with the State of Illinois.

The Seventh Circuit has historically applied qualified immunity to privately employed workers who have provided quasi-governmental services under contract with governmental entities.  *See, e.g., Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir.1995); *Sherman v. Four County Counseling Ctr.*, 987 F.2d 397, 405-06 (7th Cir.1993).  While the Supreme Court has declined to provide qualified immunity to privately employed prison guards in *Richardson v. McKnight*, 521 U.S. 399 (1997), *Richardson* is limited to its narrow facts.  *Payton v. Rush-Presbyterian-St. Luke's Med. Ctn.*, 184 F.3d 623, 631 (7th Cir. 1999) ("[*Richardson*] answered the immunity question narrowly in the context in which is arose").  *See also*, *Sain*, __ F.3d __, 2008 WL 80643 *4-*5.

*Richardson* is distinguishable because held that the private prisoner guards were not entitled to qualified immunity *because the management of prisoners was historically not an*

8

6313673v1 794835

*exclusively public function*.  *Id*. at 404-07.  Second, *Richardson* limited the denial of qualified immunity to the facts of the case which involved "a private firm, systematically organized to assume a major lengthy administrative task . . . with limited direct supervision by the government."  *Id*. at 413.  Ultimately, *Richardson* suggested that qualified immunity would be appropriate in cases where a contract employee is only "briefly associated with a government body, serving as an adjunct to government in an essential government activity, or acting under close official supervision."  *Id*.

Here, qualified immunity is proper as the SVP Act serves a unique public function and a recent one at that.  The Illinois Supreme Court, in holding that the SVP Act legitimately "extend[s] the incarceration of criminal defendants beyond the time whey would otherwise be entitled to release if those defendants are found to be 'sexually violent,'" noted that "substantial differences" exist between the SVP Act and the Illinois Mental Health Code and Developmental Disabilities Code ("Mental Health Code").  *In re Samuelson*, 727 N.E.2d at 237.  *See also, Hargett*, 2005 WL  399300 at *19-*20 (discussing unique nature of SVPs).  These facts demonstrate that the SVP Act serves a very unique public function, the involuntary detention and treatment of violent sex offenders.  This public function has no counterpart in the private sector

Qualified immunity is also warranted given Defendant Simpson's limited role administering grievances at the DHS operated (and DOC owned) Treatment and Detention Facility.  *See, e.g.,* 725 ILCS 207/50(b) ("The Department shall operate the facility provided by the Department of Corrections under this subsection and shall provide by rule for the nature of the facility, the level of care to be provided in the facility, and the custody and discipline of persons placed in the facility.").  Further, DHS, not Defendant Simpson "provide[s] by rule for the nature of the facility, the level of care to be provided in the facility, and the custody and

9

discipline of persons placed in the facility." *See* 725 ILCS § 207/50(b).  DHS's role in operating

the detention facility and State's enactment of sex offender treatment standards under the SEX

OFFENDER MANAGEMENT BOARD[3] distinguishes this case from *Richardson*.[4]  Finally, the Illinois

Administrative Code provides that Ms. Simpson serves a limited role in providing grievance

recommendations *to DHS officials who have the ultimate authority to rule for or against a*

*grievant*.  *See* 59 ILAC §§ 299.810; 299.820; 299.840.

Against this backdrop, it would be inequitable to afford qualified immunity to the DHS

officials who allowed smoking to take place until it was recently banned and deprive Defendant

Simpson of this immunity simply because she is directly employed by a private contractor with

DHS.  At the same time, it would be inequitable to afford qualified immunity to the DHS

employee who ultimately upheld Ms. Simpson's grievance recommendation and deny this

immunity to Ms. Simpson.

WHEREFORE, for the reasons set forth above, Defendant JOSEPH PROCTOR

respectfully requests that this Honorable Court dismiss Plaintiff's case.

Respectfully submitted,

By: /s/ James C. Vlahakis
　　　one of the attorneys for Defendant
　　　Sandra Simpson

James C. Vlahakis

---

[3]　　*See, e.g.,* 20 Ill.Admin.Code §§ 1900.80, 1900.100, 1990.140 and 1900.150.

[4]　　The Seventh Circuit in Sain held that the Clinical Director of the Treatment Program (an employee of Liberty Healthcare Corporation, Defendant Simpson's employer) was entitled to qualified immunity on the basis that the plaintiff had waived any objection under Richardson at the trial level.  The Seventh Circuit applied waiver because it noted that the incomplete record precluded if from finding that argument evaded the *Richardson* decision.  *Sain*, __ F.3d __, 2008 WL 80643 *4-*6.  Here, a more complete record supports the application of qualified immunity as the facts demonstrate that this case is distinguishable from *Richardson* given the fact that Ms. Simpson serves a role in providing grievance recommendations to DHS officials.

Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000
jvlahakis@hinshawlaw.com

6313673v1 794835

**CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2007, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following to all counsel of record.

I hereby certify that on April 30 2007, a copy of the foregoing document will be sent via U.S. mail, postage prepaid and properly addressed to the following:

| | |
|---|---|
| Lemberger<br>c/o Department of Human Services<br>R.R. #1, Box 6A<br>Rushville, IL 62681 | |

Respectfully submitted,

By: /s/ James Vlahakis

James C. Vlahakis
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601
312-704-3000
jvlahakis@hinshalaw.com

6313673v1 794835